Good morning, Your Honors. May it please the Court, Audrey Huang on behalf of Appellant Billy Soza WARSOLDIER. With me this morning at Council's table are Scott Miller and Zach Smith, also from Bingham & McCutcheon, and Peter Eliasberg from the ACLU. A couple of them look like they need a haircut to me. Your Honors, Appellee's argument that Mr. WARSOLDIER's practice of religion is not being substantially burdened simply because he has not been forced to cut his hair has no merit, and it's at odds with the law under Sherbert v. Verner and its progeny. And those cases stand for the proposition that putting pressure on an individual and forcing him to choose between abandoning his religion and abandoning his practice of religion is a violation of the law. Or forfeiting benefits or undergoing punishment is a substantial burden, and that deregulation does not have to be a direct restraint on the religious practice to be considered a substantial burden. In our case, the CDC placed Mr. WARSOLDIER on C-status for the mere fact of adhering to his religion and refusing to cut his hair according to the grooming policy. So therefore, the grooming policy does substantially burden Mr. WARSOLDIER's religion. Therefore, under RLUIPA, it is now the CDC's burden to show that the grooming policy is the least restrictive means of furthering their compelling interests. And the appellees have not met this burden. They have not offered any evidence that would support that the grooming policy is the least restrictive means, and they have not offered any evidence addressing the alternatives that we have offered. For example, the Federal Bureau — Before you move to the less restrictive alternatives, on the compelling state interest, do you agree that they have a compelling interest in requiring short hair? We don't agree that they have a compelling interest in requiring short hair. The compelling interest is not having short hair, but it's these other interests that I've stated. For example, public safety and security. They come back with — they say for security reasons, for the safety of the officers who have to inspect — would have to inspect the hair and whatnot, that there's compelling need to have short hair. There's not a compelling — there's a compelling need to secure the safety and security of the officers. However, having short hair is not necessarily the only means of achieving that goal of preserving the safety and security of the officers. This is also evidenced by the fact that CDC's regulations allow for female prisoners to have hair of any length. Female — Is it any length, or is it shoulder length? The regulations state — As long as they have to wrap it up, you know, in a bun. Correct, Your Honor. It's not very clear to me whether that's true or it's — because it says shoulder length, right? Your Honor, I believe it is that they are allowed to have — keep hair of any length, and that's in Title 15 of the California Code of Regulations at 3062. You didn't even want to say something about it, shoulder length. I couldn't figure out what the — it's a very awkwardly written regulation. Yes, Your Honor. I'm saying it's hard to tell what that means. In other words, if it's only shoulder length, it doesn't help your client because shoulder length is not long enough for him, right? Correct, Your Honor. However, they don't require the females to cut their hair according to — in accordance with the grooming policy. They are allowed to have long hair. Of any length. Right. It does say at any length, of any length. And then as Your Honor pointed out, it isn't clear if it continues to say of shoulder length. But we have also presented the alternative used in other states, such as the State of Colorado. That regulation can be found in excerpts of Record 74 through 79. And in that state, while it does have a grooming policy, they do allow exceptions for sincerely held religious beliefs. I guess your point is that even if there is some compelling need or justification for the policy, that they haven't met the other part of the test. Correct, Your Honor. Correct. Correct. Correct. Because they have not offered any evidence that would show that the grooming policy is the least restrictive means. And they haven't addressed the alternatives that we've offered. Again, Colorado. For example, New Mexico also allows an exception for sincerely held religious beliefs. That regulation is provided as an addendum to our brief. And in that state, they allow — Is that an alternative? It is an alternative, Your Honor. It is an alternative. To provide an exception is an alternative? Yes, it is. By the way, what's the status of your client now? Our client is currently released from prison from — under order of this court, which the court issued on May 26th. Does he still have, I don't know, some days to go on his sentence? Yes, Your Honor, he does. And the order of the court issued on May 26th, which can be found on Excerpts of Record, page 132. They ordered Mr. Warsolder released from custody pending disposition of the appeal. Is he contesting the loss of good time credits? We are contesting the loss of good time credits, Your Honor, because it is a result of placing Mr. Warsolder on C status. And Mr. Warsolder is placed on C status solely for the — for adhering to his religious beliefs and not complying with the grooming policy. If you are, you know, neither side has, I think, cited this Muhammad case from last term in the Supreme Court. Are you familiar with that case? I'm sorry, Your Honor? Are you familiar with the case of Muhammad v. Close from the last term in the Supreme Court? No, Your Honor. Which bears on the — on the relationship between loss of good time credits and the Heck v. Humphrey problem? I understand that appellees have relied on Heck and Prisor v. Rodriguez in saying that this is not properly before the court unless it were brought under habeas. However, the court's reasoning in Prisor hinged on the fact that the language of Section 1983 is very general and that the federal habeas statutes are very specific and those specific requirements should take precedence over the general terms of Section 1983. And in this case, we have the reverse. RLUIPA is more specific than Section 1983. And in addition, had Congress intended for habeas exhaustion requirements to limit relief under RLUIPA, they would have indicated that within the statute, but they did not include such language. But you haven't read Muhammad? No, Your Honor. Is it automatic that if you're in, would you say C status? Yes. That you automatically lose your good time credit? Yes. When you are on C status, you lose the ability to work and, therefore, you lose the ability to accrue good time credits. But I guess your fundamental attack was on the regulation. Correct. Correct, Your Honor. We are challenging the regulation as applied to Mr. War Soldier and that this regulation is not the least restrictive means of meeting their interests and that the appellees have not met their burden of establishing that it is. What other alternatives? You said there's a possible alternative for a religious exception. Yes, Your Honor. Other alternatives that they could use instead of allowing an exception, you mean? Do you mean other? Well, what if they didn't want that one? Well, they already conduct daily visual inspections of the prisoners, and that would go to meet some of their concerns with regards to allowing Mr. War Soldier to keep hair at any length. In terms of other alternatives, such as during those inspections, they could, for example, if they're concerned that there might be something hidden in the hair, they could have the prisoner run his fingers through his hair just to show that there is nothing hidden in the hair. Sort of a neat and clean requirement. In a way, but it would just show that there's nothing that is hidden in his hair, which is just loose and long about his shoulders. So as part of the daily inspections, that's something that they could do. And they haven't shown that doing that would somehow pose any extra burden on them different from what they already do on a daily basis. And it's that lack of evidence that goes to point to the fact that they have not met their burden, and therefore we cannot find that the grooming policy is the least restrictive means. And RLUIPA is really a mandate from Congress that protects the important right of free exercise of religion. And although prisoners may have other rights that are limited and restricted by being in prison, Congress did not want this particular right, because it is so important, to be arbitrarily burdened. And they signaled this by placing this highest level of scrutiny on actions that burden religious freedom. And this is much different from the traditional test under Turner v. Safely, which is a rational basis. Therefore ‑‑ You know, I looked through all the documents that were placed in the excerpts of record. What is there, at least from your perspective, if anything, that points to the fact that the State considered alternatives to this policy? I don't think that there is anything in the record, Your Honor, that states that they considered any alternatives. They just say that this is the only alternative. But you can't just rely on these sort of blanket statements. That's not enough under RLUIPA just to say, well, we have these interests. This is a way of meeting this ‑‑ that interest. And there is no other way. That's not evidence showing that this is the least restrictive means. So since they have not satisfied their burden of ‑‑ This is a minimum security. Yes, it is, Your Honor. It is a minimum security facility. Does that make a difference? It does make a difference, because RLUIPA is a fact‑intensive inquiry. So we do have to look at the facts before the Court in this case. And as Your Honor pointed out, the facts in this case is that Mr. Warsolder is in a minimum security prison. No history of attempted escapes. No history of violence in prison. And there's no reason why they shouldn't allow an exception for Mr. Warsolder to keep his hair long and be exempt from the grooming policy for sincerely held religious beliefs. Unless the Court has any further questions, that concludes our arguments. All right. We have over seven minutes to save. We're in the back. Good morning. I'm Deputy Attorney John Rittmeyer for the defendants. I'd like to start with one of the Court's questions, because there's some confusion about the female standard. You can find a quote of it at excerpts of record, page 61, which is actually part of the declaration of Mr. Rivalin, who was plaintiff's expert declarant in the case, in the application for the preliminary injunction here. And I agree with you, Judge Pius, that there's room for confusion here, but it says the hair can be any length, but it cannot extend below the shirt collar when the female inmate is standing upright and shall be worn up in a plain neat style if it's longer than the shirt collar, I suppose. So when they're out and about, if they have long hair, they just have to wear it up. Correct. So it doesn't go below the shoulder. You just said, I suppose, which means you don't know either. I don't know. I'll be addressing Mr. Rivalin's obsession with the female standards a little later in my argument, but I just wanted to point to where the actual language of the female standard was. I think I understand. For some reason, what you just said, that if they're standing up, if they're out and about, if they have long hair, it has to be above the shoulder. That seems to be what it says. It seems to be what it says. And my argument later will be that that is rationally related to the challenges of. You think that's a test? Rationally related? You think that's a test? Well, not in the case. Not in the case as a whole, Your Honor. Half the case? What do you mean when you say if it's rationally related? I just mean that it responds to the challenges of supervising female inmates, and that's dealt with in the record. That's what I meant. If I used rationally related in the wrong context, I apologize. In any event. Well, the state apparently puts females in a different category. Right. And our brief site cases that say that there is no problem with that. Your Honor. But the state must have some security concerns with women as well over their hair, correct? Correct. And they have grooming standards to deal with the female inmates' security concerns or their concerns as to female inmates that correspond with those concerns. In other words, there are standards. They're just not the same as males, and the cases suggest that having different standards is all right. Now, the Court is here today to review this denial of a preliminary injunction for abuse of discretion. Judge Liu did not abuse his discretion in denying plaintiff's request for a preliminary injunction. There is no reliable indication in the record that he misperceived the law, and in any event he reached the proper decision in this case. Judge Liu did not abuse his discretion in finding, as he impliedly did, that defendants, my clients, were more likely to prevail at trial on the least restrictive alternative theory than was plaintiff. Plaintiff concedes that defendants have a compelling interest in security, good hygiene, and public safety. That's at appellant's opening brief, page 15. Now, this moves us quickly to the question of whether the record supports a finding that defendants were more likely to show that CDC's grooming standards were the least restrictive means of achieving those compelling interests than plaintiff was to show the opposite. And that framing of the issue bears some emphasis because if you read plaintiff's briefs, it really doesn't come clear that that is the issue. You just have this statute that's so clear. It says, no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution as defined, and to go on. And this chapter shall be construed in favor of a broad protection of religious exercise to the maximum extent permitted by the terms of this chapter in the Constitution. That is what RLUCA says, Your Honor. It also has an exception where prison officials can show a compelling interest in a least restrictive alternative. A compelling interest? I mean, to me, that's an interest that's compelling. We submit that security, hygiene, and public safety are compelling interests. But you have to look at the individual. And that individual, under the statute, their religious exercise, or her religious exercise, is subject to broad protection under the statute. You have to show compelling reason as far as this person is concerned. Now, he's in a minimum security prison. He hasn't created any problems. He's certainly made a compelling argument about his religious practices. You're not disputing that, are you? I'm sorry. I'm not disputing. Are you disputing that maintaining his hair long and not cutting it is part of his religious practice? No, Your Honor. All right. So what do they do? They put him in, where, solitary? No, Your Honor. What did they do? Well, the record, his own declaration suggests that he was subject to a mix of discipline. He was not allowed family visits. And there's some confusion in the record about what that means. My understanding is that means that he's not allowed contact visits with family members. His access to the exercise yard was limited. His work opportunities were limited. Correct. Correct. He was not allowed to work. His ability to draw scores, when they went down from $145 to, what, $80? Correct. $60? To some lower amount. Yeah. His canteen purchases. $80 to $45, yeah. His canteen purchases are limited. Expelled from the print shop and landscaping classes. Expelled. Lost his phone call rights. Yes. Those are what the sea status rules provide for. And apparently any good time that he's accumulated is lost. Or he can't accumulate good time. Something along those lines. That came later, didn't it? Well, it depends on what Your Honor means by later. Later is the time after. Okay. Yeah, I can agree with you on that. It's really not clear whether the 47 days or so of lost credit involves credit he was not able to earn because he went on sea status, or whether he forfeited time that he already had. I don't think that it's really. You mean the record doesn't show that. In fact, the loss of good time credits really wasn't even known until much later in this proceeding, right? It was not known until May. It was not known to the petitioner. And it was not known to these defendants. It was brought to the attention of the motions panel that granted the injunction pending appeal. Correct. I was on that panel. As soon as the defendants learned of the loss of credits or the failure to earn credits, whatever it happens to be, the defendants put in an errata that informed Judge Liu that they had inaccurately represented the length of Mr. War Soldier's incarceration immediately, as soon as they found out. Who was the correction? From what to what? From May 21st. That was his, the working knowledge of his release date to July 7th. By my count, that's 47 days. And he probably served, undoubtedly served a few more days after, between May 21st and the date that this court ordered him released. Well, what is the basis of your, you do make a heck claim, don't you? Heck versus Humphrey. Absolutely. And the basis of that is what? If an injunction is issued that completely forbids the imposition of, or has the effect of requiring the defendants to give the credits, it will shorten Mr. War Soldier's sentence by about 42 days. Well, but you just said you don't know why the good time credits were taken away. And from a heck point of view, it's not important. His sentence will be 42 days shorter if this, because he will be either granted or restored work time credits that were taken away because he failed to obey the grooming standards. Well, is that why the good time credits were taken away? You just said you didn't know why. I didn't, I said I didn't know whether they were either not earned or forfeited. In any of, it really, as I said, Your Honor, in my opinion and in the defendant's position. It runs in both ways. He gets shorter time and longer hair. Is that what you're saying? Not at all, Your Honor. I'm saying that from a heck versus Humphrey point of view, it's not particularly important whether he lost credits or failed to earn them. He's working here on a case. What case is that? I'm sorry. What case is that? Prysor versus Rodriguez and heck versus Humphrey. They both say they both say it doesn't make any difference whether it's forfeited or not earned. They both say that habeas corpus is the remedy that a prisoner must seek. If the issue before the court is the fact or duration of the incarceration. By the way, are you familiar with this Mohamed case from last term? Vaguely, Your Honor. Yes. And what it does, as I understand it, that case makes a distinction, exactly the distinction that I've just been talking about, between a case where the fact or duration of the sentence is in play and some other kind of case. That case pointed out that Mr. Mohamed, the inmate, was not seeking to shorten his sentence and therefore could proceed under Section 1983. That is, at least I haven't read that case recently, but that's what I understand the holding of that case to be. If that's the correct interpretation, then if the plaintiff here were willing to, you know, drop pursuit of the good time credit issue, then heck wouldn't be a problem. Yes. Because. And if. Excuse me, Your Honor. Other types of discipline imposed don't have don't go to the duration of the sentence. Correct. If you want to call it discipline. That's what the defendants call it. And that's what it looks like to me. All right. Was there an administrative determination that he lost, that he wasn't going to get good time credit? Or was there some regular. In other words, given notice, you know, you're losing your good time credit. You can't earn good time credit. And there was an administrative determination. Or did somebody up in Sacramento calculate his amount in the length of his time or his release date based upon the fact that he was on C status? Actually, the record has that calculation. It is an art and a science. The classification of inmates and credits are an art and science that I don't pretend to understand. What? An art and a science, Your Honor. Well, it's an art. It's partly an art, yes. In any event, it's not clear to me, as I said, whether. People's liberty depends on someone's artistic sense. Your Honor, if CDC fails in its calculation, there's always a resort to the courts through habeas corpus. Well, you know, we get plenty of business through the state. We don't need any more. OK. Well, they try to get it right. I assure you. And in fact, there's I don't believe that Mr. War Soldier is making any challenge to the amount of time he either didn't earn or lost. Right. He's simply saying that he should have earned it or kept it because he says that there should have been a religious exception to the grooming standards. And I'd like to return to the issue of the evidence. That was before Judge Lou. That had to do with the grooming standards and the sea status rules being the least restrictive alternative to meet the compelling interests of. I don't know if all that makes any difference, because although you said, you know, he played the right standard, he really didn't make a articulate a basis for any conclusion that, well, playing it doesn't have a chance of prevailing. Right. All he said was, well, he's going to get on 18 days. So there's no injury. So I'm going to deny the injunction. He never addressed the merits. Did he in his ruling? He certainly. Well, his ruling was was on the record oral. Right. And he said he'd read all the papers of the parties. He didn't take each one of these requirements and comment. No. Success. He didn't say anything about the merits and what the standard that CDC had to observe under the right loop. He didn't say anything about the, you know, the likelihood of the of the plaintiff winning on the merits. He said nothing about that. He just said, well, look, he's only got 18 days. So I see no irreparable harm. I'm going to deny the injunction. That's the substance of his ruling, isn't it? He didn't tie the 18 days to irreparable harm, at least not that I recall. That was the substance of his ruling. That's what he said. More with the plaintiff is scheduled to be released in 18 days. This court finds no need to grant the injunction. So he said in so many words. I think that this court, as it does on a daily basis, can determine that Judge Lou made a ruling on the question of least restrictive alternatives in denying the request for preliminary injunction. I mean, I don't believe that it needs to be the same planet this morning. Yes, Your Honor, we certainly are. We're on the planet where courts. Well, thank you for noticing. I see yours. You know, you don't want to have my bandage or the reason for it. But but let me tell you, Your Honor, it's OK, really. It's your honor. We're on the planet where, as I said, courts of appeal daily look at a judge's ruling and say it's implied in this ruling that he ruled on certain issues. And that's what happened here. Judge Lou had in front of him a whole lot of evidence on the issue of least restrictive alternative. And I don't think this court ought to go forward and just assume that he didn't act on it. And if I may just summarize what some of that evidence was. I want to start by saying that I've only got two minutes. Well, I'll talk as fast as I can. Give me the least restrictive amount of time. Well. What Judge Lou really had with regard to these restrictive alternatives was a classic case of dueling experts. There were experts from the prison system, the California prison system, Sue Fasciola and Susan Hubbard. Miss Fasciola talked about and I won't go into her qualifications there in the record. She talked about the problems with long hair very significantly. We read all that about, you know, height. Then Your Honor. Then Your Honor also read about. Your Honor read about the two long hair related escapes that occurred in 1997. You read about that was the year that CDC began the process of implementing with less restrictive alternatives. That seems to go more towards the compelling security and all of that. Well, I respect the judge. Well, we're in the record. Would you put could you put me in the record where they considered other alternatives and ruled them out? Well, in the car, I'm not in the context of this kind of affidavits. I read them carefully. Did you look at the director? They don't discuss alternatives. Did you look at the director's rule? The director's letter, the letter, the big letter. Well, it's about two pages. This is a letter from the director of CDC. And you should think about alternatives in the context of first of all, Mr. War Soldier simply says that the alternative is no enforcement as to him. That was what CDC was doing before the grooming standards. So in essence, Judge Pius, CDC was was confronted with the alternative that Mr. War Soldier is suggesting in this case. And they decided to do something else. When they take a person, you know, their hair is really precious to them. It's tied in with their religion. They only cut it when some close member of the family dies. You know, they're not a danger to anyone. They're in a minimum security prison. They're behaving themselves. They're doing gardening. They're doing all these good things. And because you've got the statute that says it should be broadly construed, got to be a compelling reason. Why do you take somebody like that and punish them? I don't understand. Well, Your Honor, it's the record. And it may be a little inconvenient, you know, you know, maybe a little inconvenient. Maybe, you know, maybe you got to have him go like this with his hair, you know. And I mean, I'm always happy to see people that have a lot of hair. I'll echo that. I hope mine's not too long for your honor. Your Honor, if I may, the CDC has a program there. You had to have a haircut every Friday evening just to pass inspection on Saturday morning. So is that a military program? Yeah, sure. And so it's just just a joke. I appreciate it, Your Honor. Mr. Ritmer, you know, along the lines of Judge Bergeson's comments, what's the argument that having the same policy that applies to every prison in the state, you know, from Pelican Bay on down to the, you know, the most minimum security institution is the least restrictive alternative as far as the minimum security institutions are concerned? Each institution, Your Honor, has its own security concerns. Mr. Ryland, this is quoted from the Cal regulations. Your Honor, statewide regulation, isn't it? Yes, it is indeed. Your Honor, you need really look no further than the rival in declaration. Are you saying this institution where the plaintiff was incarcerated had a lesser, less restrictive policy than what's shown in the Cal regulations? No, it was the same policy. And if I may address why it's important to have the same policy. First of all, it's just more convenient and easier to enforce. More convenient is, yeah, that's exactly it. I mean, it's not the least restrictive, it's just more convenient. Your Honor, California prisons, according to this record, hold 151,000 inmates. Ninety-four percent of them are subject to these rules. Actually, they're all subject to these rules, but 94 percent are males. It's, as the declarations of Fasciola and the other Hubbard say, it's impossible, or at least highly unlike, it's impossible or nearly impossible to enforce a rule that requires the prison system to evaluate each prisoner with regard to his or her hair and his or her... That's not what my question went to. My question was making a distinction between Pelican Bay and the minimum security institution. Your Honor, the Rivlin Declaration describes what goes on in this particular institution, a community correctional facility. Prisoners go outside of the walls to work. Prisoners have more freedom within that institution. I would submit to you... CDC has judged him to be a lesser security risk, right? That's exactly why. They want to prepare him to go out into the community. Right, and giving him more freedom to move around, or at least until he's on sea status, more freedom to move around, freedom to move outside of the walls. I submit to you that the grooming standards and, for example, accurate photos that aren't obscured by long hair or a beard are more important in this... You know, you can always buy yourself a wig. You can always get all kinds of disguises. You know, I mean, come on. Your Honor, the ability to change appearance quickly is an aid, as shown by the Fossiola Declaration, is an aid in the process of escape and in obscuring one's appearance after the escape. In other words, to avoid detection thereafter. That's certainly what people try to do. And CDC's grooming standards are a reasonable reaction to that tendency on the part of some prisoners to try to escape. At least that's part of it. So why don't you force him just to all cut their hair? Well, one reason is the law requires the least restrictive alternative. Forcible cutting, first of all, puts correction officers in the position of essentially holding down inmates that don't want their hair cut. There's a propensity or potential for violence there. It's simply deemed by CDC not to be necessary when there are other things that can be done. The C status rules are one of the other ways to deal with the situation. And there are others that are probably just... CDC doesn't. What? CDC does not compel them to cut their hair. You punish them. You make their life miserable. Well... You're punishing people because they want to exercise their religious beliefs. I just don't understand that. All that is done to them... You're over six minutes and 16 seconds. Your hair has grown one sixty-fourth of an inch. Well, I haven't been up here for a day, Your Honor. It's only been 20 minutes. Oh, you've been up there 26 minutes and 33 seconds. Oh, that's what the six minutes here means? 20 plus six? Yeah, you're below the line now. It's red. I apologize, but... The red dot is, you know... It's like in the debates. I've been trying to answer the court's questions. Yeah, I know. I know. It's in the debate. Well, Your Honor, in terms of disposition, since the Court has pointed out that Judge Liu's decision is Delphic at best, I would suggest remand at least if there isn't an affirmance entirely. I think Judge Liu is entitled to get the instructions of this Court as to what the proper standards are and to take another look at the case. Okay. Good suggestion. Thank you.  No, Your Honors, I'd just like to correct a few statements that the CDC made in their argument. One is that Mr. Warsolder was put in solitary confinement, and that's in page 30 of the record. That was one of his first rule violations. Second is that Mr. Warsolder was placed on c-status because of his refusal to cut his hair. That's clear from Mr. Loudman's declaration, which is found on page 102. That was a classification decision. They classified him as c-status because he refused to cut his hair. And also we point you to page 129 of the excerpts of record in which Deputy Attorney General Barry Thorpe acknowledged that he stated that he did not dispute that Mr. Warsolder's lost credits are due to his c-status, which he received for failing to comply with the CDC's ruling policies. Where is that in the record? Page 129 of the excerpts of record. In addition, we'd just like to point out that Judge Pius is right in recognizing that the State does have the same security interest in women. The CDC has not shown that allowing women to keep their hair long but putting it up is in any way better meets their interest, and that they can't hide weapons in their hair because it's up or anything to that extent. Lastly, we'd just like to point out that we're not solely challenging the good time credits, but the other aspects of the c-status, like the loss of phone call, like the loss of attending the classes. And lastly, we'd just like to say that Mr. — I'm sorry, I don't remember his name, but that the c-status is not related to the State's compelling interests, and that they haven't shown that loss of phone call privileges or not being able to attend classes is any way related to that, and they're trying to say, well, that's the least restrictive means, and that's just simply not true. Thank you. Thank you very much. And this matter is submitted, and the Court will recess until 9 a.m. tomorrow morning. Thank you. All rise. This Court, for this session, stands adjourned.
judges: Pregerson, Tashima, Paez